# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 18-00026-KD-N |
| | ) |
| VALERIA BROWN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Valeria Brown's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(B) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516[1] (doc. 86). Upon consideration, and for the reasons set forth herein, the Motion for Compassionate Release is DISMISSED without prejudice and the Motion pursuant to the CARES Act is DENIED.

I.  Background

In February 2018, Valeria Brown and her brother John Spinner were indicted for the offenses of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1) and discharging a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2) (doc.1). According to the factual resume, Brown admitted to the following offense conduct:

> On October 10, 2016, at 0000 hours, two black males entered the Walmart, located at 2500 Dawes Road, Mobile, Alabama, armed with handguns. The two suspects held victims at gunpoint at the self-checkout register and took the deposit bags. The two suspects then took the cash cart that was currently being

---

[1] Brown's letter is construed as a motion for compassionate release or in the alternative for home confinement under the CARES Act. United States v. Brown, 748 Fed. Appx. 286, 287 (11th Cir. 2019) ("Courts are obligated to 'look behind the label' of pro se inmate filings to determine whether they are cognizable under 'a different remedial statutory framework.'") (quoting United States v. Jordan, 915 F.2d 622, 624-25 (11th Cir. 1990)).

> used to collect deposits from the registers. The two suspects wheeled out the cart containing the deposits and fled in a red Ford pickup truck.
>
> Prior to the two suspects entering the Walmart, the defendants, Valeria Brown and John Spinner, entered the Walmart. The plan for the robbery was that Valeria Brown and John Spinner, who were, in fact, brother and sister, were to pose as a couple with an infant child who were simply customers in the Walmart store. While they were inside, they communicated to the two armed suspects via cell phone when it was clear for them to enter the Walmart and commence with the robbery. Once Valeria Brown and John Spinner gave the all clear to the two suspects, Valeria Brown and John Spinner left the store and waited outside for their two conspirators to complete the robbery.
>
> Valeria Brown and John Spinner waited in a white 1997 Nissan Altima . . . When the two armed suspects fled from the Walmart, they entered a red Ford pick-up truck. The two armed suspects then fled from the Walmart in the vehicle. A witness, K.R., noticed the two armed suspects fleeing in the red Ford and began to follow them. Valeria Brown and John Spinner proceeded to follow the witness, K.R., who was following the two armed suspects. John Spinner, while traveling in the white Nissan Altima with Valeria Brown, armed with a black .45 caliber semi-automatic pistol, fired several shots in an attempt to cause K.R. to stop following the red Ford pick-up truck with the two armed suspects. As a result of the gunfire, K.R. drove off the road.

(Doc. 37).

Brown pled guilty to both counts (docs. 37, 38). Her total offense level was 19, and with a criminal history category of I (her score was 0), her advisory sentencing guidelines range was 30 to 37 months. However, the minimum term of imprisonment for Count 2 was ten years. On August 3, 2018, she was sentenced to a term of 1 day as to Count 1 and 120 months, consecutive, as to Count 2, for a total term of 120 months and 1 day (doc. 63).

Brown is now 25 years old and has served approximately two and one-half years of her 120-month and one day sentence. She is incarcerated at Federal Correctional Institution Aliceville, in Aliceville, Alabama. Her release date is March 12, 2027.

    II.    <u>Motion for Reduction of Sentence or Compassionate Release</u>

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Brown does not allege that she complied with either of the statutory prerequisites for consideration of her motion. Since she failed to do so, she has not met the necessary prerequisites for the Court to consider her motion. Accordingly, Brown's motion is dismissed without prejudice for failure to comply with the statutory requirements. See United States v. Alam, 960 F. 3d 831, 834 (6th Cir. 2020) ("The language Congress used is quite mandatory anyway. It says a 'court may not' grant relief without complying with the exhaustion requirement, 18 U.S.C. § 3582(c), and thus operates as an 'unyielding procedural requirement[.]'") (quoting United States v. Dowl, 956 F.3d 904, 908 (6th Cir. 2020) (per curiam)).

However, even if Brown had met the statutory prerequisites, her motion would still be denied.  Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 729 (11th Cir. Feb. 25, 2020) (citing 18 U.S.C. § 3582(c)). Title 18 U.S.C. § 3582(c)(1)(A) provides

for modification or reduction of a sentence i.e., compassionate release. Since Brown is 25 years old, only subparagraph (i) could apply.[2]

The compassionate release provision of subparagraph (i), as amended by the First Step Act, provides that the district court "upon motion of the defendant after the defendant" has met certain statutory prerequisites, "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The applicable Policy Statement is found at U.S.S.G. § 1B1.13.

With respect to extraordinary and compelling reasons, Brown alleges that her mother is not physically well and is having difficulty taking care of Brown's three minor children and Brown's disabled uncle (doc. 86). Brown alleges that her mother has chronic obstructive pulmonary disease, "other health related conditions" and does not drive. Brown alleges that before incarceration, she drove her mother and uncle to doctors' appointments, shopping, etc., as well as providing other assistance, and taking care of her children, but now these responsibilities are a "daily struggle" for her mother. (Id.). Brown also asserts that her mother and uncle "are at great risk for Covid-19 due to their poor health" and that her "mother's daily stress levels continue to soar" (Id.). Brown admits to her "poor choices" and that she has failed her mother

---

[2] Subparagraph (ii) provides for a reduction of sentence when "the defendant is at least 70 years of age, has served at least 30 years in prison" and other factors are met. 18 U.S.C. § 3582(c)(1)(A)(ii).

4

and her children, but she has "truly seen the errors" she has made (Id.).  She moves the Court to grant "home confinement or any relief the Court sees fit" (Id.).

Brown's reasons do not constitute "extraordinary and compelling reasons" that would warrant a reduction in her sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  "Extraordinary and compelling" reasons are not defined in the statute. 18 U.S.C. § 3582(c)(1)(A).  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Thus, the Sentencing Commission promulgated the following Policy Statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  U.S.S.G. § 1B1.13, cmt. n. 1(A)-(D). However, Brown does not allege that she has a terminal illness, a serious physical or medical condition, a serious functional or cognitive impairment, or that she is experiencing deteriorating physical or mental health because of the

aging process, such that her ability to provide self-care in prison is substantially diminished. U.S.S.G. § 1B1.13, cmt. n. 1(A). She does not allege that she meets the age requirement in Application Note 1(B) (at least 65 years old). Id., at cmt. N. 1(B). Brown does not allege any family circumstance which could meet the criteria in Application Note 1(C). While she does allege that her incarceration placed a burden on her mother, she does not allege that the caregiver for her children is deceased or incapacitated. Id., at cmt. N. 1(C).

The only remaining criteria, Application Note 1(D), provides that the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). In its present version, Application Note 1(D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019). But now that the First Step Act allows the inmate to move for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

In that regard, the Bureau of Prisons has not determined that difficult circumstances faced by family members when a parent of minor children is incarcerated constitutes an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). . See Bureau of Prison Program Statement 5050.50, Compassionate

Release/Reduction in Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

Additionally, even if Brown met her burden to show extraordinary and compelling reasons, the Court must still weigh the applicable sentencing factors. 18 U.S.C. § 3582(c)(1)(A) (the court . . . may reduce the term of imprisonment . . . after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)."). In that regard, the Court has considered the absence of criminal history and Brown's characteristics. However, the Court has also considered the nature and circumstances of Brown's offenses and finds that the factors do not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). As set forth above, see supra § I, Brown participated in an armed robbery that resulted in the discharge of a firearm from a vehicle that she was driving while fleeing the scene.

Therefore, in this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B), & (C). Accordingly, Brown's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) would be due to be denied.

   III.   Motion pursuant to the CARES Act

Brown moves the Court for "home confinement" which appears to be a motion for release to serve the remainder of her sentence on home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516. Previously, the Bureau of Prisons had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6

months." 18 U.S.C. § 3624(c)(2) (as amended by the First Step Act of 2018, Pub. L. 115-391, Title I, § 102(b)(1), Title VI, § 602, 132 Stat. 5210, 5233, 5238) (effective Dec. 21, 2018). Additionally, the statute required that the Bureau of Prisons "to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." Id.

Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to Covid 19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP. CARES Act, Pub. L. 116-136, § 12003(b)(2).[3]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020),

https://www.justice.gov/file/1266661/download

However, the CARES Act did not give the Court authority to grant motions to serve the remainder of a sentence on home confinement, or to direct or order the BOP to place a prisoner

---

[3] "Home Confinement Authority. During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).

8

in home confinement.  Instead, pursuant to 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's confinement".  Since the Court cannot grant the relief she seeks, Brown's motion would be denied.  See United States v. Allen, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020) (finding that a "request for home confinement under the CARES Act is different from a reduction-in-sentence (RIS) request based upon compassionate release" and that the statutes which implement the CARES Act, 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, "do not authorize a federal court to order the BOP to release a prisoner.").

**DONE** and **ORDERED** this 5th day of January 2021.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**